Dan L. and Aurora Garrett, Jr., et al. [1] v. Commissioner. Garrett v. Commissioner
Docket Nos. 5410-64, 5427-64, 5430-64. .
United States Tax Court
T.C. Memo 1966-170; 1966 Tax Ct. Memo LEXIS 114; 25 T.C.M. (CCH) 879; T.C.M. (RIA) 66170; July 20, 1966
Gino P. Cecchi, 655 Van Ness Ave., San Francisco, Calif., for the petitioners. Sheldon M. Sisson, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The Commissioner has determined deficiencies in the income tax of the petitioners for 1960 as follows: Docket
Name
No.
Deficiency
Dan L. and Aurora Garrett,
Jr.
5410-64
$1,773.48
Gerta Abeles
5427-64
1,265.28
Daniel Geller and Mona Gel-
ler
5428-64
4,213.51
Serge J. Oblin
5429-64
779.35
Fredric Speier and Chris-
tiane Speier
5430-64
2,044.46
The issues presented are whether for the purpose of computing the partners' distributive shares of the ordinary net loss for 1960 of the partnership, Pacific Properties, the respondent correctly denied: (1) a deduction of $55,244.72 taken by the partnership *115 in its return of income for the period February 26, 1960 through December 31, 1960, as a loss sustained on the demolition of the buildings on certain parcels of its real estate purchased by it during the foregoing period, and (2) a deduction of $2,276.36 taken by the partnership for depreciation on such buildings during the foregoing period. Findings of Fact Some of the facts have been stipulated and are found accordingly. Dan L. and Aurora Garrett, Jr., are husband and wife and filed their joint Federal income tax return for 1960 with the district director in San Francisco, California. Gerta Abeles filed her Federal income tax return for 1960 with the district director in San Francisco, California. Daniel Geller and Mona Geller are husband and wife and filed their joint Federal income tax return for 1960 with the district director in San Francisco, California. Fredric Speier and Christiane Speier are husband and wife and filed their joint Federal income tax return for 1960 with the district director in San Francisco, California. Public hearings on a new zoning code for the City of San Francisco began in 1958 and in that year the Board of Supervisors of the City and County *116 of San Francisco, California, adopted the text of a new zoning code for the city. Thereafter the Department of City Planning and the Planning Commission put into final form for public consideration a proposed zoning map. Public hearings on the proposed zoning map were held by the Planning Commission during the first 6 months of 1959 and by the Board of Supervisors intermittently from July 1959 until about November 1, 1959. On November 2, 1959, the Board of Supervisors adopted a zoning map which with the text * of the new zoning code became effective 6 months thereafter, or on May 2, 1960. In 1959 and 1960, as well as at the time of the hearing herein, Thomas E. Pierce was a real estate broker licensed by the State of California and in 1960 owned and operated a real estate office under the name of T. Pierce & Company. Charles V. Elliott in 1959 and 1960 also was a real estate broker licensed by the State of California. On May 28, 1959, or prior thereto in 1959, a partnership known as A.E.P.G. Venture, sometimes hereinafter referred to as Venture, *117 was formed and acquired real properties in San Francisco, California. Venture formally began operations on May 28, 1959, and was composed of the following partners with the respective indicated percentages of ownership: Percentage of
Name
ownership
Gerta Abeles
42.10
Charles V. Elliott
33.42
Thomas E. Pierce
12.46
Daniel Geller
12.02
Total
100.00 Pierce acted as manager of the Venture partnership. On the date Venture formally began operations, May 28, 1959, it acquired the following real properties known as: 1131-1135 Geary Street, being Lot 9, Block 714, in San Francisco, California, and 260-262 Myrtle Street, being Lot 9A, Block 714, in San Francisco. On March 7, 1959, Gerta Abeles as a representative of Venture had negotiated for the purchase of the property situated at 1131-1135 Geary Street, with the improvement thereon, namely, a 3-story frame building with a composition roof constructed in 1890 and consisting of 3 flats which had been made into apartments and with the furniture in the apartments, all of which was employed in the conduct of a rooming house both prior to and subsequent to Venture's acquisition thereof. A map attached to the instrument *118 Gerta Abeles had executed for the purchase of the property at 1131-1135 Geary Street showed the following as other properties situated in Block 714 then available for purchase: Lot 9A (260-262 Myrtle Street) Lot 8 (1137 Geary Street) Lot 10 (1125 Geary Street) Lot 6 (1150 Franklin Street) As shown by the map, the properties composing Lots 8, 9A, and 10 were adjacent to the property at 1131-1135 Geary Street. Lot 6, a corner lot in the same block as all the foregoing properties, in addition to having frontage on Geary Street and Myrtle Street also faced on Franklin Street. The map also showed the Jack Tar Hotel as being situated immediately across Geary Street from the property situated at 1131-1135 Geary Street. The Jack Tar Hotel is a large hotel in San Francisco which was constructed in 1957 and 1958 and opened for business in 1959. On April 6, 1959, Gerta Abeles as a representative of Venture had negotiated the purchase of the property situated at 260-262 Myrtle Street. To obtain the proper amount of financing for the acquisition and development of the properties situated at 1131-1135 Geary Street and at 260-262 Myrtle Street, applications were made to savings and *119 loan associations to ascertain the amount of the loans that would be granted with respect to such properties. On April 21, 1959, Charles V. Elliott, as agent for Venture, wrote a letter to Eureka Federal Savings and Loan Association, San Francisco, California, requesting a loan on the properties at 1131-1135 Geary Street and at 260-262 Myrtle Street. The letter read, in part, as follows: Please consider this request for a loan in amount of $26,000 to be secured by subject property. Your attention is invited to the major development now in process of construction on the entire square block facing this site. The undersigned, with three other responsible investors are purchasing the property as a permanent investment. A subsequent improvement of the realty will undoubtedly be planned at which time an appropriate payment on the loan will be expected. You will have first opportunity to provide construction and long term financing. At the present, your best term of years will be appreciated considering the age of the property. We are endeavoring to hold the monthly payments around $300.00 (approximately 10 years at 7%). The request for $26,000 is not inflated. The appraisal *120 enclosed is submitted for convenience of your valuator. All areas have been accurately measured by the undersigned who is qualified as an appraiser by the Savings and Loan Commissioner for the State of California. The land was independently valued by an appraiser for Baldwin and Howell at $700.00 per front foot. Please call the undersigned or Mr. Pierce in this office. We will arrange access at your convenience. Your serious consideration of this request is earnestly solicited and we will sincerely appreciate a commitment. [Emphasis added.] Two days prior to Venture's acquisition on May 28, 1959, of the property at 1131-1135 Geary Street the Commercial Union Assurance Company, Ltd., issued a policy in the amount of $26,200 against loss to the property arising from fire and lightning with the proceeds therefrom to be paid first to Eureka Federal Savings and Loan Association, and secondly and thirdly to named individuals. A partnership return of income for Venture for 1959 executed by Thomas E. Pierce, as partner or member, was filed with the district director in San Francisco, California. In the return, total gross rentals of the partnership from its properties was shown *121 as $3,307.50, total rental expenses were shown as $4,241.48, and a net loss of $933.98 from rentals was reported. The return showed repairs to the properties in the amount of $402.37. Neither the return nor any other part of the record shows that any expenditure was made during the year for any addition to or any betterment or improvement of the properties. On or about February 26, 1960, a partnership known as Pacific Properties, sometimes hereinafter referred to as Pacific, was formed and began operations on February 26, 1960. Pacific was composed of the following partners with the respective indicated percentages of ownership: Percentages
Name
of Ownership
Gerta Abeles
14.181
Thomas E. Pierce
5.154
Daniel Geller
17.456
Dan L. Garrett, Jr.
11.277
Serge J. Oblin
6.766
Fredric Speier
13.589
Robert Hecker
18.044
Sanford Martin
13.533
Total
100.000
In addition to Thomas E. Pierce, who acted as manager of Pacific, being a real estate broker, Daniel Geller also was a real estate broker. Dan L. Garrett, Jr., and Fredric Speier were attorneys. Pacific was a successor to Venture and in addition to the properties acquired by Venture in 1959, Pacific *122 acquired two additional properties in San Francisco, California, in March, 1960. The additional properties were 1125 Geary Street and 1137 Geary Street. The following is a statement of the properties acquired by Pacific to the end of March 1960, Pacific's total cost and its allocations of total cost to land and to buildings: Property at
Total Cost
Land
Building
1131-1135 Geary St.
$ 37,703.97
$18,421.01
$16,507.71
260-262 Myrtle St.
2,775.25
1125 Geary St.
40,342.30
19,687.04
20,655.26
1137 Geary St.
30,265.60
17,615.74
12,649.86
$108,311.87
$55,723.79
$52,588.08
In May 1960 Pacific acquired the property known as 1150 Franklin Street. Although that property included a building situated thereon the entire amount of Pacific's basis for the property was allocated by Pacific to the cost of the land. The building at 1150 Franklin Street was demolished in July 1960. Under the San Francisco zoning code in effect prior to May 2, 1960, the effective date of the new zoning code, Pacific's properties to a depth of 100 feet from Geary Street were zoned "light industrial." The remaining 20 feet bordering on Myrtle Street was zoned "second residential. *123 " A rooming house was permissible in both zones. Under the new zoning code, all of Pacific's properties were zoned R-4 and a rooming house is a permissible use in such zone. On July 7, 1960, Thomas E. Pierce as owner and owners' authorized agent filed an application with the San Francisco Planning Commission requesting permission for a conditional use as a parking lot of all of the heretofore mentioned properties of Pacific. The application contained, among others, the following statements: (1) that there was a need for additional parking facilities in the area, (2) that the proposed use and the changes planned would substantially improve the area, and (3) the properties would be landscaped and maintained in an attractive condition. On August 4, 1960, the Planning Commission granted the request for the conditional use. Beginning in the early or middle part of 1960, Thomas E. Pierce, as manager of Pacific, received several telephone calls from the San Francisco City inspectors notifying him of certain nonconforming uses being made of Pacific's buildings and requesting that the existing conditions therein be changed. Subsequently, on October 7, 1960, the Superintendent of the Bureau *124 of Building Inspection for the City and County of San Francisco affixed to the doors of the front entrances of 1125, 1131-1135, and 1137 Geary Street instruments entitled "Warning of Violation" of stated sections of the San Francisco building code with the further statement that due to dilapidation and general condition, the buildings were being placed on a list of possible condemnation. On October 15, 1960, the director of the San Francisco Department of Public Health issued a "Notice to Abate Nuisance" with respect to 1131-1135 Geary Street which was received by Pierce. The notice contained, among other things, an order to restore the building to original occupancy or obtain necessary permits to convert legally and to dismantle apartments and convert to three flats. On an undisclosed date in October 1960, the buildings at the above-mentioned locations were demolished. A partnership return of income for Pacific for the period February 26, 1960 through December 31, 1960, executed by Thomas E. Pierce, as partner or member, was filed with the district director in San Francisco, California. In the return the total gross rentals of the partnership from its properties was shown as $2,727, *125 total rental expenses were shown as $9,453.76, and a net loss of $6,726.76 from rentals was reported. The return showed repairs to the properties in the amount of $177.68. Neither the return nor any other portion of the record shows that any expenditure was made during the year for any addition to or any betterment or improvement of the properties. In August 1961 the Planning Commission revoked for a short time the conditional use for a parking lot of Pacific's properties which it had granted on August 4, 1960. The reason for the revocation was that the properties had been used for about a year in a manner which did not comply with the terms on which the conditional use had been granted on August 4, 1960. On August 16, 1961, Pacific, as seller, for the stated considerations, granted to A & M * Development Company, Inc., sometimes hereinafter referred to as Development Company, a 180-day option to purchase for $130,000 the land then used and leased as a parking lot as follows: Lot 8 (1137 Geary Street), Lot 9 (1131-1135 Geary Street), Lot 9A (260 Myrtle Street) and Lot 10 (1125 Geary Street), all in Block 714. The primary reason Development Company sought an option to purchase *126 the foregoing properties rather than at that time making an outright purchase of them was to ascertain the availability of a change in their zoning from R-4 to a C-3 zoning. On September 7, 1961, Scott Chandler, as agent of Thomas E. Pierce and the other owners of the properties covered by the option and as a representative of Development Company, filed an application with the San Francisco Planning Commission for the rezoning of such properties from R-4 to C-3. R-4 is a residential type zoning and C-3 is a commercial type zoning. In an R-4 zone, offstreet parking is required but there is no such requirement in a C-3 zone. The zoning in the areas north and east ** of the properties covered by the option was C-3 and the various uses in those areas included hotels, offices, stores, auto sales lots, and flats. The zoning in the areas south and west of the properties covered by the option was R-4 and the uses in those areas included churches, apartments, flats, and rooming houses. *127 In the application for rezoning it was stated that the proposed use of the properties was to erect thereon a 6-story reinforced concrete structure with four floors comprising 30,000 square feet for use as offices and the lower two floors for parking. In his letter transmitting the application for rezoning to the Planning Commission, Chandler stated in part as follows: The option holders intend to build an office building on this particular piece of property if it is re-zoned and will provide a structure which will be in keeping with the re-development taking place in the adjacent area. Because of the proximity of this property to Van Ness Avenue and the Jack Tar Hotel, it is felt that the property is not really suitable for multiple family development and that an office building could be developed now on this property thus producing tax revenue for the city of San Francisco as well as needed office space with suitable parking. The application for rezoning was approved by the Planning Commission on December 7, 1961. Thereafter, in or about March 1962, the Development Company purchased the properties covered by the aforementioned option. In 1961 during the staff review of the *128 application for rezoning from R-4 to C-3 of the properties covered by that application, Thomas E. Pierce or Robert Hecker, each of whom was a member of Pacific partnership in 1960, admitted to the Zoning Administrator for the City and County of San Francisco that the price paid for the properties covered by the application "reflected an intention and an economic necessity" for "new commercial development, and that the owners were confronted with a hardship situation that called for early restoration of a zoning classification that would permit new commercial use." In its partnership return of income for the period February 26, 1960 through December 31, 1960, Pacific took a deduction for a demolition net loss of $55,244.72 sustained on its buildings which were demolished in October 1960. The loss was explained as follows: Property could not be used for purpose for which acquired. Reconditioning costs appeared excessive considering limited income available if reconditioned under unforeseen restrictions imposed by the City and County of San Francisco. The loss was computed as follows: Cost basis
$52,588.08
Less depreciation
2,276.36
Adjusted basis
$50,311.72
Add demolition costs
4,933.00
Net loss
$55,244.72
*129 In determining the deficiencies in issue the respondent determined that the properties, the buildings on which were demolished, were purchased with the intention of demolishing the buildings. Accordingly, the respondent disallowed the demolition loss of $55,244.72 deducted by Pacific in its return of income, disallowed a deduction of $2,276.36 taken by Pacific in the return for depreciation on the buildings for the period in 1960 prior to their demolition and determined that Pacific's net loss for the period was $2,615.40 instead of $60,136.48 reported in its tax return. As a result of the foregoing the respondent determined, in the cases of the petitioner partners involved herein, distributive shares of Pacific's net loss in smaller amounts than they had reported in their respective income tax returns. Pacific acquired the real properties in issue, the buildings on which were demolished in October 1960, with the intention of demolishing the buildings thereon. Opinion The parties are in agreement that under the applicable provisions of section 165 of the Internal Revenue Code of 1954 and of section 1.165-3 of the Income Tax Regulations *130 , if Pacific Properties purchased the real properties in issue with the intention of demolishing either immediately or subsequently the buildings situated thereon, no deduction is allowable on account of the demolition of the old buildings even though any demolition originally planned is subsequently deferred or abandoned and that the entire basis of the property so purchased shall be allocated to the land only and further that such basis shall be increased by the net cost of demolition or decreased by the net proceeds from demolition. The parties also are in agreement that whether real property has been purchased with the intention of demolishing the buildings thereon or whether the demolition of the buildings occurs as a result of a plan formed subsequent to their acquisition is a question of fact to be determined from a consideration of all the surrounding facts and circumstances. From a careful consideration of the entire record herein, including numerous exhibits, in connection with the various contentions advanced by the parties, we have concluded and found as a fact that Pacific acquired the real properties in issue, the buildings on which were demolished in October 1960, with *131 the intention of demolishing the buildings thereon. In our opinion to find otherwise would require us to take an unrealistic view of the record as a whole which we are unable to do. Having found as set out above, we sustain the respondent's action both in disallowing the demolition loss deducted by Pacific in its partnership return of income and in disallowing its deduction for depreciation taken in the return with respect to the demolished buildings. Decisions will be entered for the respondent. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: GERTA ABELES, docket No. 5427-64; DANIEL GELLER and MONA GELLER, docket No. 5428-64; SERGE J. OBLIN, docket No. 5429-64; and FREDRIC SPEIER and CHRISTIANE SPEIER, docket No. 5430-64.↩
*. By official order of the Tax Court dated 7/27/66 and signed by Judge Withey↩, the word "text" was substituted for the word "test".
*. By official order of the Tax Court dated 7/27/66 and signed by Judge Withey↩, the letter "M" was substituted for the letter "N".
**. By official order of the Tax Court dated 7/27/66 and signed by Judge Withey↩, the word "east" was substituted for the word "each".